SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CR-16-606

| | | |
|---|---|---|
| ROBERT SANDRELLI | | Opinion Delivered: April 27, 2017 |
| | APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT [NO. CR-2012-1189] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE J. MICHAEL FITZHUGH, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

This appeal returns to us after we remanded for the circuit court to hold a hearing on two of Robert Sandrelli's claims for ineffective assistance of counsel. After holding the hearing, the court denied relief on both grounds. We affirm the circuit court's judgment.

Robert Sandrelli was charged with four counts of rape. The victim was Sandrelli's fourteen-year-old son. A jury trial was held in August 2013. This first trial resulted in a hung jury, and the circuit court declared a mistrial. A second trial was held a month later, which resulted in Sandrelli being convicted on all four counts. Our court of appeals affirmed the conviction in *Sandrelli v. State*, 2015 Ark. App. 127.

Following direct review, Sandrelli filed a petition for postconviction relief under Arkansas Rule of Criminal Procedure 37.1. Sandrelli propounded three claims of ineffective assistance of counsel that he alleged occurred at his second trial: (1) defense counsel was under emotional and professional stress; (2) defense counsel failed to call any character witnesses; and (3) defense counsel unilaterally decided that Sandrelli would not testify. The

SLIP OPINION

circuit court denied Sandrelli's petition without holding a hearing. Sandrelli appealed to this court, arguing that he was entitled to a hearing on his claims.

We affirmed in part and reversed and remanded in part. *See Sandrelli v. State*, 2016 Ark. 103, 485 S.W.3d 692. We held that Sandrelli's first claim was conclusory; therefore, he was not entitled to a hearing on it. But we remanded for a hearing on the last two claims. Because the circuit court apparently struggled to understand why this court was remanding the matter and did not understand the concept of a "control-case," we once again explain. This is similar to control-groups in scientific experiments. Here, two different trials took place, with two different outcomes. The first trial resulted in a hung jury and the second trial resulted in a conviction. Sandrelli's petition for postconviction relief claimed that the only fact distinguishing the two trials was the lack of defense witnesses at the second trial. The circuit court, based on the record alone, found that counsel and Sandrelli "must have agreed no witnesses would be called." This was speculative. We held that the circuit court could not conclusively determine, without some evidence, that counsel's decisions were supported by reasonable professional judgment. The circuit court should not guess the reasons behind the trial counsel's decisions; rather, the court should establish those reasons based on evidence presented at a hearing.

On remand, the circuit court held a hearing on these two claims. Sandrelli testified at the hearing. He stated that he testified in the first trial and intended to testify again at the second trial. Yet he claimed that his attorney, Ray Spruell, never asked him to make a decision whether to testify. Rather, Spruell informed him, after the first day of trial, that he

would not be testifying. Sandrelli also stated that Spruell never discussed with him his decision to call no character witnesses at the second trial.

Spruell testified as well. He stated that while the first trial ended in a hung jury, the vote was 11–1 in favor of conviction. Spruell thought the character witnesses who testified in the first trial played an insignificant role in the jury's decision: "The bottom line is I never felt that character witnesses were the key to why we got a hung jury the first time around." For instance, Spruell noted that one witness, Betty Turner, was nervous on the stand and agreed on cross examination that she "assumed that if something was going on [the victim] would keep quiet and wouldn't say anything about it." Spruell also noted that the witnesses appeared to be surprised when they were confronted with Sandrelli's earlier conviction for domestic battery against his son.

Spruell testified that the best character witness, Woodrow Star, told him between the first and second trials that he would no longer be a good character witness for Sandrelli. According to Spruell, Star told him that Sandrelli had displayed behavior that would cause Star to change his testimony about Sandrelli's truthfulness. Star testified as well, but he denied that this interaction ever took place.

Finally, Spruell stated that he told Sandrelli that the decision whether to testify rested with Sandrelli. Spruell asserted that he recommended that Sandrelli not testify: "I knew that Mr. Sandrelli didn't like to testify in the first [trial]. So, I explained to him that it was going to be rough on him the second time around and I didn't think he would look good up there." Spruell stated that Sandrelli agreed that he should not testify. One particular concern Spruell had was Sandrelli's testimony during the first trial. When questioned about his

domestic-battery charge against his son, Sandrelli initially maintained that it was a football injury. Yet when pressed by the prosecution, Sandrelli admitted that the he had thrown his son across the room. This spontaneous admission contradicted a video-recorded interview that was admitted during the second trial, wherein Sandrelli "adamantly" denied to the police that he had ever thrown his son. Spruell was concerned how the inconsistencies would affect Sandrelli on cross.

The circuit court issued a written order denying Sandrelli's petition. The court found that counsel's decision to call no witnesses in the second trial "was a sound professional judgment by an experienced advocate and that it was reasonable." The court further found that "not only was counsel's advice [whether to testify] a matter of professional judgment of a very experienced attorney, but the decision was made by the Defendant." Finally, the court noted that Sandrelli's testimony was "self-serving, inconsistent, and totally unreasonable and not believable."

We do not reverse the grant or denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Lemaster v. State*, 2015 Ark. 167, 459 S.W.3d 802. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

Under the two-prong standard from *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner seeking postconviction relief must show that his counsel's performance was deficient and that the deficient performance resulted in prejudice. *See Feuget v. State*, 2015 Ark. 43, 454 S.W.3d 734. Under this standard, the petitioner must first show that counsel's

performance was deficient. *Id.* This requires a showing that counsel made errors so serious that counsel deprived the petitioner of the counsel guaranteed to the petitioner by the Sixth Amendment. *Id.* Second, the deficient performance must have resulted in prejudice so pronounced as to have deprived the petitioner of a fair trial whose outcome cannot be relied on as just. *Id.* Both showings are necessary before it can be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* There is no reason for a court deciding an ineffective-assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one. *Fukunaga v. State*, 2016 Ark. 164, 489 S.W.3d 644. As we discuss below, counsel's performance was not deficient, so we decline to address whether Sandrelli suffered prejudice.

"There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment." *Feuget*, 2015 Ark. 43, at 4, 454 S.W.3d at 738. "Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel." *Noel v. State*, 342 Ark. 35, 41–42, 26 S.W.3d 123, 127 (2000).

Sandrelli's argument on appeal takes issue with the circuit court's performance as a fact-finder. For example, he argues that the circuit court "focuses on the points that would support the trial counsel and ignores the facts that would support the appellant." He highlights testimony from Woodrow Star, who testified that he never told Spruell that he

had reservations about testifying in the second trial. Sandrelli notes that Star's testimony contradicted Spruell's testimony. However, as we have repeatedly held, it is axiomatic that credibility determinations are within the province of the trial court. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228. When there is a conflict of testimony, it is the trial court's job to resolve it. *Atchison v. State*, 298 Ark. 344, 767 S.W.2d 312 (1989). The circuit court credited trial counsel's testimony and concluded that the decision to call no character witnesses was based on reasonable professional judgment. This ruling was not clearly erroneous.

We also affirm on the second point. Sandrelli argues that the court erred when it "did not address the fact brought forth on the failure to Spruell to get on the record the decision of appellant to not testify." We have held in an earlier case that the failure to make a record on the waiver of the right to testify does not constitute ineffective assistance of counsel. *Williams*, 2011 Ark. 489, at 14, 385 S.W.3d at 237. In any event, the court credited Spruell's testimony that Sandrelli agreed not to testify and found Sandrelli's contrary testimony unbelievable. Spruell explained that in the first trial the State did not play the video interviews with Sandrelli; however, in the second trial, the State did introduce the video. Spruell was concerned by Sandrelli's demeanor in the video as well as the video interview depicting Sandrelli giving different answers than he gave on cross-examination in the first trial. Spruell stated that he explained these facts to Sandrelli and that Sandrelli agreed that he should not testify. The circuit court did not clearly err when it found that Spruell's advice to not testify was based on reasonable professional judgment.

Affirmed.

*David L. Dunagin*, for appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Valerie Glover Fortner*, for appellee.