2017 Ark. App. 691

**Matthew Brian BURNSIDE, Appellant**

v.

**STATE of Arkansas, Appellee**

**No. CR–17–242**

Court of Appeals of Arkansas,
DIVISION IV.

Opinion Delivered: December 13, 2017

Craig Lambert, Little Rock, for appellant.

Leslie Rutledge, Att'y Gen., by: Rebecca Kane, Ass't Att'y Gen., for appellee.

## BRANDON J. HARRISON, Judge

In 2014, a Faulkner County jury convicted Matthew Burnside of raping and sexually assaulting a twelve-year-old girl. His convictions were affirmed on direct appeal by this court in 2015. *Burnside v. State*, 2015 Ark. App. 550, 472 S.W.3d 497. He filed a timely petition for postconviction relief in the circuit court in December 2015 pursuant to Arkansas Rule of Criminal Procedure 37.1. The court granted Burnside's motion to amend his petition, and he filed an amended petition in July 2016. The court entered an order denying Burnside's petition in November 2016. No evidentiary hearing was held on the matter, and Burnside has filed a timely notice of appeal.

## I. *Standard of Review*

On appeal from a circuit court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *Wood v. State*, 2015 Ark. 477, 478 S.W.3d 194. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

When evaluating a circuit court's denial of a Rule 37 petition, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the circuit court clearly erred in holding that counsel's performance was not ineffective. *Henington v. State*, 2012 Ark. 181, at 3, 403 S.W.3d 55, 58. The totality of the evidence must be considered. *Id.* The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

Our standard for ineffective-assistance-of-counsel claims is the two-prong analysis set forth in *Strickland. Rasul v. State*, 2015 Ark. 118, 458 S.W.3d 722. Under that standard, to prevail on a claim of ineffec-

tive assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his or her defense. *Flemons v. State*, 2016 Ark. 460, at 5–6, 505 S.W.3d 196, 203. Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *Id.*

Counsel is presumed effective, and allegations without factual substantiation are insufficient to overcome that presumption. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55. A petitioner claiming deficient performance must show that counsel's representation fell below an objective standard of reasonableness, and this court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* A petitioner has the burden of overcoming the presumption that counsel is effective by identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

Additionally, when a Rule 37 petition is denied without a hearing pursuant to Rule 37.3(a), we review the circuit court's written findings setting forth that the petition is wholly without merit or that it is conclusive on the face of the record that the petitioner is entitled to no relief for clear error. *Wood, supra.*

## II. *Arguments on Appeal*

With these standards in mind, we turn to the issues Burnside raises here. He asserts that the circuit court erred on nine separate grounds.

### A. Failure of Appellate Counsel to Raise a Preserved Challenge to Hearsay Testimony

Burnside first argues that his direct-appeal counsel was ineffective for failing to argue on appeal that the circuit court committed reversible error by allowing the State to introduce hearsay testimony by witness A.W., a minor. A.W. testified that she had been friends with the victim, M.H., since sixth grade. She told the jury that M.H. was crying during lunch at school, that M.H. told her that her "mom's boyfriend tried to rape her the night before," and that the girls went to the school counselor. The court admitted A.W.'s testimony over Burnside's hearsay objection, ruling that it was an excited-utterance or present-sense impression exception to hearsay. Trial counsel argued that the two rape counts alleged by the State had occurred more than a year before the lunchtime conversation between the two girls.

A convicted defendant has the right to effective assistance of counsel on appeal under the Sixth Amendment. *Watson v. State*, 2014 Ark. 203, at 9, 444 S.W.3d 835, 842. A hallmark of appellate advocacy is the process of assessing arguments and focusing on those likely to prevail. *Id.* An appellate attorney need not advance every possible argument, regardless of merit. *Id.* Appellate counsel's failure to raise a specific issue must have amounted to error of such magnitude that it rendered appellate counsel's performance constitutionally deficient under the *Strickland* criteria. *Wooten v. State*, 2016 Ark. 376, at 6, 502 S.W.3d 503, 508. The petitioner must show that there could have been a specific issue raised on appeal that would have resulted in the appellate court's declaring reversible error. *Id.* It is the petitioner's responsibility in a Rule 37.1 petition to establish that the issue was raised at trial, that the trial court erred in its ruling on the issue, and that an argument concerning the issue could have been

raised on appeal to merit appellate relief. *Id.*

Arkansas Rule of Evidence 803(2) provides an exception to the hearsay rule for excited utterances, regardless of the availability of the declarant. For the exception to apply, there must be an event that startles or excites the declarant. *Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008). Our supreme court has held that sexual abuse of a child is a startling event within the meaning of Rule 803(2). *Killcrease v. State*, 310 Ark. 392, 836 S.W.2d 380 (1992). In addition, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation. *Fudge v. State*, 341 Ark. 759, 769, 20 S.W.3d 315, 320 (2000). The statements must be uttered during the period of excitement and must express the declarant's reaction to the event. *See id.* Whether the statement made was an excited utterance of sexual abuse rather than after intervening reflection and deliberation is a matter included within the circuit court's discretion to admit or exclude evidence, and an appellate court will not reverse the circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Frye v. State*, 2009 Ark. 110, at 4–5, 313 S.W.3d 10, 13.

There are several factors to consider when determining if a statement falls under the excited-utterance exception in Rule 803(2): the lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. *Smith v. State*, 303 Ark. 524, 798 S.W.2d 94 (1990). When adopting these factors from the decision in *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), our supreme court observed that the lapse of time between the startling event

and the out-of-court statement, although relevant, is not dispositive. *Frye*, 2009 Ark. 110, at 3–4, 313 S.W.3d at 13. That the declarant's statement was made in response to an inquiry is likewise not controlling. *Id.*

We conclude that Burnside has not shown that raising a hearsay objection regarding A.W.'s testimony on direct appeal would have resulted in this court declaring reversible error. The evidence produced at trial showed that the twelve-year-old declarant, M.H., went with A.W. (and another friend, T.W.) to Angie Benton, the middle-school counselor, during lunchtime in September 2012. M.H., who Benton had known as a shy, reserved girl with a speech impediment, was crying uncontrollably, and A.W. reported that M.H. must talk to Benton because "there's been something going on and we think you can help her." The witness testimony revealed that M.H.'s "very upset" emotional state was related to her fear that she would have to have sex with her mother's boyfriend (Burnside) again because he had touched her breast or vagina the previous night. That the declarant in this case is a child and a victim of rape and undergoing the continued stress of another encounter with the perpetrator were appropriate factors for the circuit court to consider in ruling the statement to be an excited utterance. Burnside has therefore failed to show that, had appellate counsel raised the issue, an appellate court would hold that the circuit court abused its discretion in ruling that the challenged testimony was admissible under the excited-utterance exception to the hearsay rule. And even if this issue had been raised on appeal and we were to hold that the circuit court abused its discretion in allowing A.W. to testify what M.H. told her, Burnside has failed to show how the error would have changed the outcome of the trial given M.H.'s testimo-

ny describing the rapes, which we discuss in the next point.

### B. Failure of Trial Counsel to Object to Hearsay Testimony

Second, Burnside argues that trial counsel was ineffective for failing to object to T.W.'s inadmissible hearsay testimony. T.W. testified that M.H. became upset at lunch and eventually whispered in T.W.'s ear that she had been "raped again." T.W. said that she tried to convince M.H. to go to the counselor's office, and M.H. told her she was afraid of her mother's boyfriend (Burnside). T.W. said that M.H. was still upset when they arrived at the counselor's office and that she had never seen M.H. like that before, because M.H. was "always happy. If you could make her sad or mad it was like a big deal." Trial counsel did not object to this testimony.

Burnside has failed to demonstrate that there is a reasonable probability that, but for trial counsel's alleged error in failing to object to T.W.'s testimony, the jury's decision would have been different absent the error. And even if he had raised a hearsay objection to T.W.'s testimony during trial and the circuit court ruled on the objection, Burnside has not shown prejudice. We consider a claim of ineffective assistance of counsel through the perspective of the totality of the evidence put before the jury. *Matthews v. State*, 333 Ark. 701, 970 S.W.2d 289 (1998). In this case, M.H. testified—without objection—that Burnside had sex with her in three locations and that by sex, she meant vaginal penetration by his penis. *See Burnside v. State*, 2015 Ark. App. 550, at 3, 472 S.W.3d 497, 499. In short, Burnside has not shown how keeping out M.H.'s hearsay statement to T.W. that she had been "raped again" would have resulted in a different trial outcome given M.H.'s trial testimony detailing the rapes.

### C. Failure of Trial Counsel to Present Expert Testimony

Third, Burnside argues that the circuit court clearly erred in rejecting his claim that trial counsel was ineffective for failing to investigate and secure the services of a gynecology expert and present that expert testimony at trial. He argues that this expert testimony would have made the difference "between a guilty verdict and an acquittal."

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Sandrelli v. State*, 2017 Ark. 156, at 5, 517 S.W.3d 417, 421. Counsel's decision regarding the use of experts in a criminal trial is generally a matter of professional judgment. *Echols v. State*, 354 Ark. 530, 555, 127 S.W.3d 486, 502 (2003). Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Id.*

Burnside has failed to demonstrate that his trial counsel's decision not to call a gynecology expert was ineffective assistance of counsel. The State in this case provided expert testimony that evidence of sexual trauma is usually not present on a gynecology exam. The State's expert, Marcie Hermann, cited studies showing that a sexual-assault exam does not always reveal whether a girl has had intercourse. Yet in Burnside's view, "[h]ad a [defense] expert in gynecology been consulted, he or she would have reviewed the victim's medical records and testified that based on her

size, physical makeup, and lack of injuries in her vaginal area were such that it was likely that the victim was a virgin and that no sexual penetration ever took place." But hypothetical expert-swearing matches do not support a reasonable probability that a trial outcome would have been different or that counsel's professional judgment was unreasonable. *See Echols*, 354 Ark. at 555, 127 S.W.3d at 502. We therefore affirm on this point.

Burnside further argues that the circuit court should have held an evidentiary hearing pursuant to Rule 37.3 to allow him to develop more facts regarding his gynecology expert. He is not entitled to a hearing under Rule 37.3 because the record and the related case law show conclusively that Burnside is entitled to no relief even if he had been able to procure and proffer the expert testimony he wanted. He is not entitled to relief because there is not a reasonable probability that it would have changed the outcome of the trial.

### D. Failure of Trial Counsel to Pursue a *Fifty Shades of Grey* Theory

Burnside argues that counsel was ineffective for failing to investigate and properly cross-examine M.H. because her testimony was fabricated and taken almost directly word for word from the sexually explicit romance novel *Fifty Shades of Grey*. He also argues that the circuit court clearly erred in not holding an evidentiary hearing on this issue because "[a]t a hearing, Burnside could have and would have introduced the book and pointed out specifics from the book which mirrored the alleged victim's testimony." The circuit court in this case ruled:

The record reflects that there was some cross-examination of the witness regarding the book and certain things from it. Mr. Burnside argues that there are specific instances in her testimony which mirrored sections of and phrases and scenes from the book however, even in his petition he fails to note where those were in the book and what section of her testimony was based upon the text.

A.W. testified during trial that M.H. had been caught at school with a book that she wasn't supposed to have—*Fifty Shades of Grey*. T.W. testified that M.H. had given her the book to read and told her not to let the teacher see it. On cross-examination, T.W. admitted that she thought M.H. knew the book was inappropriate and that it would be fair to say that M.H. knew what was in the book based on what she had told T.W. On redirect, T.W. said that the girls did not make up allegations because they got in trouble for having the book. M.H. testified that on the very same day she had the lunch conversation with A.W. and T.W. she brought the book with her to school from home. On cross-examination, M.H. agreed that she was aware that the book was very sexually suggestive, that her mom told her it was, and that after she took the book to school her mom told her why it was wrong to take it to school and why it was wrong to read it. It was not a book for kids, and "an un-appropriate" book. There were some uncertainties and inconsistencies in the testimony as to who had the book when and who was punished for having it.

In his Rule 37.1 petition to the circuit court and in his appellate brief, Burnside makes allegations without factual support to press his claim that M.H.'s testimony was based on *Fifty Shades of Grey*. But "[b]are assertions of ineffectiveness are not enough and conclusory statements that counsel was ineffective will not sustain a Rule 37 petition." *Anderson v. State*, 2011 Ark. 488, at 5, 385 S.W.3d 783. Nowhere does Burnside point to any specific passages or material from the book that he

claimed were applicable to M.H. He does not cite a theme in the book—only the book itself. He also does not explain how pursuing this theory would have changed the course of the trial. These bare allegations are not enough to survive a dismissal. *See Van Winkle v. State*, 2016 Ark. 98, 486 S.W.3d 778 (conclusory allegations in support of a defense theory are insufficient as a basis for Rule 37 relief).

### E. Failure of Trial Counsel to Impeach M.H. With Her Prior Inconsistent Statements

Next, Burnside contends that trial counsel was ineffective for failing to cross-examine M.H. about various prior inconsistent statements. Credibility, in Burnside's mind, was everything and "it was essential for the defense to do everything possible to expose the weaknesses and inconsistencies in M.H.'s story." He argues two specific instances in which counsel was allegedly ineffective.

The first example Burnside gives is when counsel allegedly impeached M.H. during an in camera hearing outside the jury's presence. Here are some brief facts related to this argument. On direct examination, M.H. testified that Burnside had sex with her five to six times. She described the sex as vaginal intercourse. On cross-examination, M.H. denied knowing what oral sex was. She also denied that Burnside had put anything into her mouth. During an in camera hearing outside the jury's presence, defense counsel played a recorded interview wherein M.H. stated that Burnside had licked the outside of her vagina. On further cross-examination in the jury's presence, M.H. answered, "Yes, sir. Okay I cannot remember back two years ago" when asked if she agreed that she had told the investigator that Burnside had put his penis into her mouth and "was humping" her mouth.

On this point, Burnside argues counsel was ineffective because, rather than impeach M.H. with her inconsistent prior statement in the presence of the jury, "counsel inexplicably did so in camera outside of the jury's presence." In its Rule 37 order, the circuit court found that while counsel's decision on how to cross-examine M.H. "was not as thorough as [Burnside] would believe it should have been [that] does not make counsel ineffective." We agree. Burnside had the burden of overcoming the presumption that counsel was effective, and viewing the decision from counsel's perspective at the time of trial, with the information that counsel had, we cannot say that the circuit court's finding was clearly erroneous. *See Bryant v. State*, 2013 Ark. 305, at 7, 429 S.W.3d 193, 199 (cross-examination is part of professional judgment).

Burnside's second example of counsel's ineffectiveness in cross-examining M.H. is that, before trial, M.H. told "Child Advocacy" that she had sex with Burnside "fifty times" or so. M.H. testified in front of the jury that the sex had happened five or six times. As the State notes on page 13, footnote 2 of its brief, we cannot locate any location in the record where M.H. accused Burnside of having sex with her fifty times. Burnside's brief has no abstract, addendum, or record citation for the "fifty times" allegation. We "do not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken." *Gay v. State*, 2016 Ark. 433, at 12–13, 506 S.W.3d 851, 860. We therefore affirm on this subpoint because it has not been properly developed.

### F. Failure of Trial Counsel to Call M.H.'s Brother as a Witness

Burnside next argues that trial counsel was ineffective because he did not

call M.H.'s brother to testify, and her brother would have told the jury where he was when the sexual activity between M.H. and Burnside was alleged to have had happened. According to Burnside, the brother's testimony would be that he never saw or heard any suspicious activity and if the sexual activity had really been taking place, he would have known about it—casting doubt on the veracity of M.H.'s story.

█ When reviewing an assertion of ineffective assistance of counsel concerning the failure to call a certain witness, our objective is to determine whether the failure resulted in actual prejudice that denied the petitioner a fair trial. *Breeden v. State*, 2014 Ark. 159, at 5–6, 432 S.W.3d 618, 624. That there was a witness who might have offered beneficial testimony is not itself proof of counsel's ineffectiveness. *Id.*

M.H. testified that she and Burnside were alone when the sexual activity occurred except for one occasion when her brother was in the next room. Counsel cross-examined M.H. about her brother's presence in the other room. That M.H.'s brother could have testified about where he was when the rapes occurred would not have made a material difference given M.H.'s testimony that the rapes occurred when she and Burnside were alone together. Burnside has failed to substantiate his conclusory claim or offer any evidence that counsel's decision to not call the brother as a witness was anything more than an exercise of professional judgment. Burnside has the burden to show a reasonable probability that had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Greer v. State*, 2012 Ark. 158, 2012 WL 1223760. He has not done so and we therefore affirm on this point.

## G. Anti–Child–Abuse Motorcycle Gang

█ Burnside maintains that counsel was ineffective by failing to move for a mistrial, change of venue, or other remedial measures based on the presence of an "anti-child abuse" motorcycle gang that showed up for Burnside's trial and remained directly outside the courtroom during the entire two-day trial. He argues that counsel was aware that at least 15 to 20 leather-clad gang members were in the direct view of anyone who entered and exited the courthouse and that "their mere presence created an atmosphere of prejudice against Burnside, not to mention an atmosphere of ... intimidation ... and no doubt had an influence on the [jurors'] attitudes." The State responds that Burnside has failed to show how he was prejudiced by the biker gang's presence.

We find no error in the circuit court's decision about the motorcycle-gang allegation. Here is what Burnside wrote in his petition:

Counsel was also ineffective for failing to move for a mistrial, move for a change of venue, or seek other remedial measures based on the presence of an "anti-child abuse" motorcycle gang that showed up for Burnside's trial and remained directly outside the courthouse during the entire two-day trial. Upon information and belief, this motorcycle gang (or "club") was named "Bikers Against Child Abuse." For the entirety of Burnside's trial, at least fifteen to twenty bikers, clad in their "anti-child abuse" leather motorcycle gear and sitting on their gang motorcycles, sat directly outside the courthouse where Burnside was tried, in direct view of everyone who entered and left the courthouse (including the jurors). Their mere presence created an atmosphere of prejudice against Burnside, not to mention an atmosphere of intimidation, regard-

808

ing Burnside's case and no doubt had an influence upon the attitudes of everyone who entered and left the courthouse during Burnside's trial.

Without question, Burnside was constitutionally entitled to a trial in a fair forum, free from outside influences. *See Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Here, the continuous presence of this "anti-child abuse" biker gang directly outside the courthouse created an atmosphere of prejudice and intimidation that compromised Burnside's constitutional right to a fair trial. Counsel was aware of the presence of this group and had a professional duty to take steps to eliminate the prejudice caused by this. Counsel should have either moved for a mistrial, sought a change of venue, or sought other remedial measures to eliminate this constitutional problem. Counsel's failure to do so was unreasonable, and but for counsel's failure, there is a reasonable probability that the result of this trial would have been different.

The circuit court denied this claim, writing that there is "no evidence that the group had any influence during the course of the trial and the petitioner is asking the Court to speculate that they did despite no proof to support this claim." In Burnside's appellate brief he writes that "[t]his is precisely the reason why an evidentiary hearing was necessary: to afford Burnside an opportunity to demonstrate that the presence of the gang did, in fact, create an atmosphere of prejudice." He asks us to reverse and remand for a hearing on this issue.

As stated earlier, Rule 37.3 requires an evidentiary hearing in a postconviction proceeding unless the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief. *Lacy v. State*, 2013 Ark. 34, at 4, 425 S.W.3d 746, 748. When the circuit court concludes, without a hearing, that the petitioner is not entitled to relief, the circuit court "shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings." Ark. R. Crim. P. 37.3(a). We review the circuit court's Rule 37.3(a) finding for clear error. *Woods, supra.*

A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *Burks v. State*, 2009 Ark. 598, at 7, 359 S.W.3d 402, 407. The circuit court has wide discretion in granting or denying a mistrial motion, and absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *Id.* The standard of review for denial of a motion for change of venue is whether there was an abuse of discretion by the circuit court. *Taylor v. State*, 334 Ark. 339, 344, 974 S.W.2d 454, 458 (1998). A motion for change of venue must be properly supported. *Id.*

Pursuant to Rule 37.1, a petitioner has the burden of pleading "in concise, nonrepetitive, factually specific language" at least one cause of action that is cognizable under the rule, and he must plead facts that support his claim. *See* Ark. R. Crim. P. 37.1(b); *Greene v. State*, 356 Ark. 59, 146 S.W.3d 871 (2004); *see generally Flowers v. State*, 2010 Ark. 364, 370 S.W.3d 228 (per curiam) (citing *Jamett v. State*, 2010 Ark. 28, 358 S.W.3d 874 (per curiam)); *Henington*, 2012 Ark. 181, at 6, 403 S.W.3d at 59–60. "Conclusory allegations that are unsupported by facts do not provide a basis for either an evidentiary hearing or

postconviction relief." *Nance v. State*, 339 Ark. 192, 195, 4 S.W.3d 501, 503 (1999).

In this case, Burnside has simply stated a conclusory claim that the motorcycle gang's presence outside the courthouse created an atmosphere of prejudice. He does not isolate a point in time when his trial counsel should have made a mistrial or change-of-venue motion or on what meritorious basis the motion could have been made. He also does not identify any specific act by any motorcycle-gang member that was prejudicial to him. We therefore conclude that Burnside failed to make a convincing claim that he is entitled to postconviction relief or an evidentiary hearing based on his conclusory allegations. *Shadwick v. State*, 2017 Ark. App. 243, 519 S.W.3d 722; *Nance, supra.*

### H.  M.H. and Prior Sexual Abuse Allegations

Burnside maintains that trial counsel was ineffective for failing to impeach M.H. with proof of other sexual-misconduct allegations that she and her sister had made in the past. Burnside argues that M.H. had made claims that she had been sexually abused by her grandfather and her cousin. In Burnside's view, trial counsel should have presented evidence that M.H.'s sister also had accused her mother's previous husband of sexual assault. According to Burnside, his counsel should have used this evidence to show a pattern of false rape allegations or copycat allegations. The circuit court ruled:

> The Petitioner further contends that the trial counsel was ineffective for failure to impeach the victim with proof of other allegations of sexual misconduct that she and her sister had made in the past. The trial court held a hearing on this issue prior to starting the jury trial and ruled that the victim could not be asked about her prior allegation but that

it would come in through the investigator. Furthermore, the trial court told counsel to approach the bench before inquiring about what anything her sister said. The trial counsel chose not to do so. The Petitioner has failed to show a basis for relief pursuant to Rule 37.

The circuit court's finding is not clearly erroneous. It is Burnside's burden to show that trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Taylor v. State*, 2013 Ark. 146, at 5, 427 S.W.3d 29, 32. A minor's prior sexual activity is generally excluded in a criminal sexual-assault trial. *See, e.g., State v. Townsend*, 366 Ark. 152, 156, 233 S.W.3d 680, 683 (2006). Burnside has not shown how his trial counsel's failure to fully explore M.H.'s and her sister's sexual history as a trial defense rises to the level of effectively having no counsel. He has not shown that his counsel's professional judgment fell below the minimum the constitution requires. We therefore affirm on this point, too.

### I.  M.H. and Her Mother's Undue Influence

Finally, Burnside argues that trial counsel was ineffective for failing to pursue a defense theory that M.H.'s mother influenced M.H. to fabricate the allegations against him. M.H. testified at trial that she did not tell her mother about the abuse because she was scared her mother would think it was M.H.'s fault. Burnside claims that M.H.'s mother was having an affair with another man for two months before M.H. reported the rapes. He says that M.H.'s mother married the man a few months after Burnside's arrest. According to Burnside, M.H. was unduly influenced by her mother to bring the charges. In Burnside's view, M.H.'s mother was "in-

strumental" in having him charged with the crimes.

Burnside is entitled to no postconviction relief. Given the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, *Williams v. State*, 2017 Ark. 123, 517 S.W.3d 397, the circuit court did not clearly err in finding that trial counsel's choice to not pursue a defense theory that M.H.'s mother influenced her to fabricate the allegations was a reasonable trial-strategy choice. Burnside's argument therefore fails under the first *Strickland* prong.

### III. *Conclusion*

The circuit court's decision is affirmed in every respect and Burnside is entitled to no postconviction relief.

Affirmed.

Gruber, C.J., and Virden, J., agree.