Cite as 2020 Ark. App. 130

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-19-711

|  |  |
|---|---|
|  | **Opinion Delivered:** February 19, 2020 |
| QUENTIN KYLE GREEN<br>APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46CR-16-388] |
| V. |  |
|  | HONORABLE DAVID N. LASER, JUDGE |
| STATE OF ARKANSAS |  |
| APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Quentin Kyle Green appeals after the Miller County Circuit Court entered an order denying his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1. Appellant argues in five points on appeal that the circuit court erred in denying relief because his trial counsel had a conflict of interest that was not remedied by a valid written waiver and because trial counsel was ineffective. We affirm.

## I. *Background*

Appellant was convicted by a Miller County Circuit Court jury of rape and sexual assault in the second degree. Before addressing the allegations of ineffective assistance of counsel, it is necessary to recite the evidence adduced at appellant's trial. Lyndi Green, appellant's former wife, testified that she has four children. K.B. is one of her middle children. Ms. Green testified that when K.B. was ten years old, K.B. told her that appellant, K.B.'s stepfather at the time, had touched her inappropriately under her pajamas and under

her panties. Appellant denied the allegations after Ms. Green confronted him about the incident. Ms. Green testified that on that same night that she confronted appellant, appellant indicated that he thought about killing himself. After that incident, Ms. Green had K.B. stay with her grandparents and took K.B. to see a counselor. A few days later and after further conversations with Ms. Green about the ramifications of the allegations, K.B. recanted her story, apologized to appellant, and returned home. Additionally, the family went to an attorney, Michael Peek, and a video was taken of K.B. explaining that she had recanted her story. A few years later, K.B. told Ms. Green that she had lied when she had recanted her story. Additionally, K.B. told her biological father about the incident, and it was reported to law enforcement.

Officer Patsy DeHart testified that she was the investigator assigned to the case against appellant in 2016. Officer DeHart testified that law enforcement had received a call on the Arkansas State Police hotline with the allegations. Arkansas State Police Crimes Against Children Division took the initial report, and it was screened by the Arkansas Department of Human Services (DHS). Officer DeHart contacted the Children's Advocacy Center (CAC) and arranged for K.B. to be interviewed.

Melanie Halbrook, a forensic interviewer at the CAC in Benton County, testified that she had interviewed K.B. K.B. was fifteen years old at the time of the interview. Ms. Halbrook testified that during the interview, K.B. disclosed that appellant had digitally penetrated her when she was ten or eleven years old. Although K.B. reported that the first time it happened when she was about ten years old, K.B. indicated that appellant had continued to inappropriately touch her on subsequent occasions. K.B. additionally disclosed

to her that she had falsely recanted her story after the first incident because her mother did not believe her. Ms. Halbrook testified that over eighty-five percent of children will recant their statements when there is a lack of maternal support and the abuse is by a male caretaker. Ms. Halbrook further testified that of the eighty-five percent of children who recant, about ninety-three percent of them will later reaffirm those allegations. Regarding the video that was taken in Mr. Peek's office, Ms. Halbrook testified that the interview was not conducted under the protocols used by her office. She testified that Mr. Peek used a lot of direct questions, forced multiple-choice answers, legal jargon, and hypothetical questions, all of which she avoids. Ms. Halbrook testified that after her interview, she opined that K.B.'s statement and body language were consistent with sexual abuse. Videos of both interviews were played for the jury.

Ky.B. testified that she is K.B.'s older sister. According to Ky.B., when K.B. was ten or eleven years old, K.B. told her about an incident in which appellant had come into K.B.'s room one night and inappropriately touched K.B.'s "girl parts." Ky.B. testified that her sister was "hysterically crying, like bawling her eyes out" when she told her about the incident.

D.H., K.B.'s friend, testified that in January or February 2016, she attended an overnight church retreat with K.B. That night, K.B. told D.H., along with several other girls in attendance, that appellant had inappropriately touched her when she was approximately ten years old. D.H. described K.B. as emotionally weak, hanging her head, and crying some while making the statement.

K.B. testified and described in detail two incidents in which appellant inappropriately touched her. K.B. testified that on at least one occasion, appellant digitally penetrated her vagina. K.B. admitted that she recanted her story after telling her mother about one of the incidents and that she had lied during the video that was recorded in Mr. Peek's office. She explained that her mother did not believe her story at that time and that she felt the counselor also did not believe her. In 2016, after Ms. Green and appellant had divorced in 2015, K.B. attended a church retreat. K.B. testified that she told her friends at the event that appellant had, in fact, inappropriately touched her despite her prior statements to the contrary. Afterward, she told Ms. Green and her biological father that she had not made up the story about the incidents.

Appellant testified and denied the allegations. Appellant indicated that when K.B. made the initial allegations, she was angry with her mother and wanted to live with her biological father. He did not know why she realleged the allegations. Appellant further denied that he had ever threatened suicide to Ms. Green.

Mr. Peek testified that he had interviewed K.B. after appellant and Ms. Green hired him. At that time, K.B. had initially accused appellant of inappropriately touching her and then recanted her story. Mr. Peek explained that it was not his duty to find out the truth but to protect his client who paid him. Mr. Peek testified that he does not necessarily model his interview on CAC's protocols. However, he does try to avoid leading questions on all material parts and felt that he did so during K.B.'s interview.

Appellant finally offered two character witnesses on his behalf. Appellant's grandmother testified that appellant had never touched anyone inappropriately to her

4

knowledge or do anything that would cause her concern. Furthermore, appellant's pastor testified that he did not have any concerns about appellant being around either of his children or his grandchildren.

After all evidence had been presented, including the videos from both interviews, the jury found appellant guilty of rape and sexual assault in the second degree, and appellant was sentenced to serve consecutively 300 months and 60 months in the Arkansas Department of Correction, respectively. After appellant's conviction, he appealed, arguing that the trial court abused its discretion in refusing to allow defense counsel to inquire of an expert witness concerning her previous testimony in an unrelated case. We affirmed on direct appeal because we were precluded from addressing appellant's arguments. *Green v. State*, 2018 Ark. App. 38.

II. *Petition for Postconviction Relief and Rule 37 Hearing*

Following our affirmance, appellant filed his petition for postconviction relief alleging that he was entitled to relief because (1) defense counsel had a conflict of interest not remedied by a valid waiver; (2) trial counsel was ineffective by his failure to object to inadmissible testimony from Melanie Halbrook of the CAC; (3) counsel was ineffective by his failure to object to testimony of witnesses quoting the accuser and not seeking an instruction that their testimony was not being admitted for the truth of the matter asserted; (4) counsel was ineffective for failure to object to improper impeachment of a defense

5

witness; and (5) counsel was ineffective by his failure to present or seek to present testimony concerning the accuser's source or inspiration to make the original claim of abuse.[1]

An evidentiary hearing on appellant's petition was held, and appellant was represented by counsel at the hearing. Appellant's trial counsel, Joseph Tyler, testified that he had represented appellant three or four times before this case. At the time of appellant's trial, Mr. Tyler's law partner, "Shorty" Barrett, was dating the elected prosecuting attorney, Stephanie Potter Black, who prosecuted appellant in this case. The two subsequently married. Although Mr. Barrett refrained from practicing criminal defense in her circuit to avoid any appearance of impropriety, Mr. Tyler did not think he had any conflict of interest under the Arkansas Model Rules of Professional Conduct. Therefore, Mr. Tyler did not obtain a written waiver, but he did make appellant aware of his partner's relationship with Ms. Black. Mr. Tyler did not initially think Ms. Black would be participating in the trial at the time of his first conversation with appellant. However, Mr. Tyler explained that he had a second conversation with appellant approximately one month before trial after he found out that Ms. Black would be participating. Regardless, Mr. Tyler explained that at no time has he felt that his law partner's relationship with Ms. Black affected his representation or gave him either a favorable or unfavorable edge. He further testified that he did not think Mr. Barrett's personal interest with Ms. Black limited his representation of appellant, and Mr. Barrett was not involved in appellant's defense in any manner.

---

[1]Appellant alleged one other ground for relief in his postconviction petition. However, because he has abandoned that argument on appeal, we do not address it.

6

Regarding Ms. Halbrook's testimony, Mr. Tyler explained at the Rule 37 hearing that he stipulated to her expertise at trial because he wanted to prevent Ms. Halbrook from "bedazzling" the jury with her qualifications. He further stated that he did not want the jury to hear thirty minutes of testimony concerning those qualifications. Additionally, Mr. Tyler stated that this decision was based on his review of her resume and on his previous experiences in other trials in which she was a witness. Regarding the specifics of her testimony, Mr. Tyler stated that it had been his experience that the trial court would allow Ms. Halbrook to explain her training and experience and to explain the five steps of disclosure. Mr. Tyler acknowledged that Ms. Halbrook testified about the process of disclosure and patterns and demeanors of children who have been victims of sexual abuse. However, according to Mr. Tyler, Ms. Halbrook was not permitted to specifically state that K.B. was telling the truth. Although Mr. Tyler admitted that Ms. Holbrook did testify that K.B. exhibited the signs and symptoms of a person who had been sexually abused, his experience led him to believe that the trial court would deem such testimony admissible. Finally, he stated that because he thought some of the statistics announced in Ms. Halbrook's testimony were "ludicrous," he had decided to cross-examine her regarding those statistics.

Mr. Tyler explained at the Rule 37 hearing that he had discussed the admissibility of the videos of the victim's interviews with the State prior to trial. Because Mr. Tyler thought it was critical to have the recantation video played for the jury in its entirety, as did appellant, he and appellant entered into a stipulation agreement with the State to allow both videos to be admitted and played without objection. Mr. Tyler stated that this decision was part of his trial strategy.

7

Mr. Tyler admitted that the State suggested at trial that Mr. Peek was a mandated reporter of child abuse during its cross-examination of Mr. Peek. He also admitted that he knew Mr. Peek was not a mandated reporter and thought he objected, but after a review of the record, it appears that he failed to do so.

As part of appellant's defense at trial, Mr. Tyler attempted to introduce testimony regarding another child who lived in the household with K.B. This child apparently claimed that she had been abused by another man. The defense's theory was that this child gave K.B. the idea to falsely accuse appellant. However, the trial court refused to allow this testimony to be introduced through appellant's examination. The State objected and argued that Mr. Tyler needed to ask those questions of K.B. instead of appellant. Additionally, the State argued that it was irrelevant. The trial court sustained the objection and stated that it was irrelevant. Mr. Tyler testified at the Rule 37 hearing that he had originally made the strategic decision to introduce this testimony through appellant's testimony rather than K.B.'s because he felt certain that K.B. would deny it and that the trial court would rule it inadmissible. He stated that even if the State objected, it would at least allow appellant to "try to ramble off something real quick to put a bug in the jury's ear." Moreover, he stated that even if the trial court had allowed him to ask K.B. those questions if he recalled K.B., he did not want to do so because K.B. came across as credible throughout her testimony. Mr. Tyler did not think appellant's testimony went as well. In fact, Mr. Tyler expressed his concerns over appellant's behavior and demeanor on the stand. He described appellant as very lethargic and stated that he appeared to be under the influence of drugs or alcohol. At one point, he thought appellant was going to fall asleep.

Mr. Tyler admitted that Ky.B. and D.H. testified before K.B. at trial. However, he explained that he did not object to their testimony regarding K.B.'s statements to them because he thought their testimony was admissible as excited utterances and present sense impressions.

At the Rule 37 hearing, Mr. Tyler testified that during his thirteen years of experience in the courtroom, he had developed a sense of what the trial court would deem admissible or inadmissible. Thus, he said that it was generally fair to say that not objecting to certain testimony was also a matter of trial strategy. He testified that it may not be prudent to object and raise more attention to unfavorable testimony, especially if he thought the jury may not have been paying attention at the time. He explained that an objection could essentially backfire and cause the jury to become more attentive when they otherwise would have been "falling asleep." Mr. Tyler further stated that in his experience, it was also not always wise to object, thereby emphasizing certain testimony, especially if he thought the trial court would let it in regardless.

After the evidentiary hearing, the circuit court denied appellant's petition in a detailed written order filed on June 26, 2019. This appeal followed.

III. *Standard of Review*

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been

9

committed. *Id*. In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id*.

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Conley*, *supra*. In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first demonstrate that counsel's performance was deficient. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id*. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id*.

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Conley*, *supra*. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*.

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result

unreliable. *Id.* We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697).

### IV. *Conflict of Interest*

First, appellant argues that he is entitled to relief because trial counsel had a conflict of interest that was not remedied by a valid waiver. Appellant more specifically argues, as he did before the circuit court, that Mr. Barrett's romantic relationship with the prosecuting attorney created a conflict of interest that was imputed to him. He further argues that the conflict of interest could only be waived through a written waiver, which was not obtained in this case. Moreover, appellant contends that he is entitled to relief because he suffered prejudice as Mr. Tyler failed to effectively represent him as evidenced by the other errors outlined in appellant's petition for postconviction relief. The circuit court denied appellant relief on this ground, and we agree.

Rule 1.7 of the Arkansas Rules of Professional Conduct (2019) states the following:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

. . . .

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer,

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law:

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing[.]

Rule 1.10(a) of the Arkansas Rules of Professional Conduct further provides,

While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 3.7, *unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm*.

(Emphasis added.)

Mr. Tyler and Mr. Barrett practiced in the same law firm. Appellant argues that Mr. Barrett had a conflict of interest pursuant to Rule 1.7(a)(2) based on a personal interest that prohibited him from representing appellant. He further argues that because Mr. Tyler and Mr. Barrett were in the same law firm, Mr. Barrett's conflict of interest was imputed to Mr. Tyler because it presented a significant risk of materially limiting the representation of appellant. However, Mr. Tyler specifically testified at the Rule 37 hearing that he did not feel that his law partner's relationship with Ms. Black gave him either a favorable or an unfavorable edge. Mr. Tyler further testified that he did not think Mr. Barrett's personal interest with Ms. Black limited his (Mr. Tyler's) representation of appellant, and Mr. Barrett was not involved in appellant's defense in any manner. The circuit court listened to Mr. Tyler's testimony and reviewed the arguments of appellant's counsel; however, it was not convinced that Mr. Tyler had a conflict of interest under Rule 1.10(a). Having carefully

reviewed the record, we see no clear error in the circuit court's finding and affirm on this point.

### V. *Failure to Object to Melanie Halbrook's Testimony*

Appellant additionally argues that he is entitled to relief because trial counsel was ineffective by his failure to object to inadmissible testimony from Melanie Halbrook of the CAC. Under this point, appellant lists several complaints as to why Mr. Tyler was ineffective. He complains that Mr. Tyler should not have stipulated to Ms. Halbrook's expertise or allowed the CAC interview to be played for the jury without objection. He additionally argues that Ms. Halbrook's testimony "strayed far afield from explaining interviewing techniques and into areas of psychology for which she had not even been proposed as an expert." Appellant quotes Ms. Halbrook's testimony that "[b]ased on [K.B.'s] statement and her body language, it's consistent with sexual abuse" and argues that the elicitation of Ms. Halbrook's opinion of K.B.'s truthfulness is sufficient grounds to vacate the convictions. Further, appellant contends that Mr. Tyler was ineffective when he failed to challenge the statistics that Ms. Halbrook posited.

Mr. Tyler testified at the Rule 37 hearing that he made a decision to stipulate to Ms. Halbrook's expertise because he wanted to prevent Ms. Halbrook from "bedazzling" the jury and spending thirty minutes discussing her qualifications. He based his decision on his past experiences in other trials in which she was a witness and after a review of her resume. He further testified that he and appellant entered into a stipulation agreement with the State to allow both videos to be admitted and played without objection because he felt it was critical to ensure that the recantation video was played for the jury in its entirety. As

for Ms. Halbrook's specific testimony, our courts have expressly held that expert witnesses may testify generally about forensic interviews and recantation. *Harper v. State*, 2019 Ark. App. 163, 573 S.W.3d 596. According to Mr. Tyler, he thought Ms. Halbrook's testimony stayed within these parameters and was admissible. However, even if Ms. Halbrook's testimony "strayed far afield" as alleged, Mr. Tyler also testified at the Rule 37 hearing that he made strategic decisions to not object to certain testimony so as to not draw more attention to the unfavorable testimony. Instead, he cross-examined Ms. Halbrook regarding the statistics she mentioned, and he attempted to cross-examine Ms. Halbrook regarding the results of other trials in which she testified and offered her opinions. In fact, it was during that exchange when Ms. Halbrook stated that K.B.'s statement and body language were consistent with sexual abuse. Immediately after Ms. Halbrook's statement, Mr. Tyler asked her whether she was ever wrong about her opinion and asked her about another unrelated case in which that defendant had been acquitted. Ultimately, the trial court ruled Mr. Tyler's questions regarding the unrelated case were improper.

The circuit court found that each of appellant's arguments under this point fell within the realm of trial strategy, and we agree. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Williams v. State*, 2017 Ark. 123, 517 S.W.3d 397; *Smith v. State*, 2016 Ark. 417, 504 S.W.3d 595. Even if counsel's tactical choices had been different with the benefit of hindsight, the fact that the strategy was unsuccessful does not render counsel's assistance ineffective. *Williams*, *supra*. Moreover, our supreme court has held that the extent to which a witness is questioned, the specific manner of questioning,

14

and the tactical considerations attending those issues do not warrant relief under Rule 37. *Lemaster v. State*, 2015 Ark. 167, 459 S.W.3d 802. As such, we cannot say that the circuit court's denial of relief on this point is clearly erroneous, and we affirm.

## VI. *Failure to Object to Testimony Quoting Accuser or to Seek a Limiting Instruction*

Next, appellant argues that he is entitled to relief because trial counsel was ineffective by his failure to object to testimony of witnesses quoting the accuser and not seeking an instruction that their testimony was not being admitted for the truth of the matter asserted. More specifically, appellant contends that trial counsel was ineffective for failing to object to the State's eliciting inadmissible hearsay testimony from D.H. and Ky.B. regarding K.B.'s statements to them that appellant had inappropriately touched her. Appellant further contends that he was prejudiced because their testimony was used to bolster K.B.'s testimony.

The circuit court disagreed and made the following relevant findings:

> The defendant complains that counsel was ineffective for failing to object to testimony offered by two individuals, [Ky.B.] and [D.H.], regarding the victim's disclosure of abuse. The first of those, [Ky.B.], is the older sister of the victim, [K.B.]. At the time of trial, [Ky.B.] was 18 years old, [K.B.] was 16. [Ky.B.] testified that when she was 13 and [K.B.] was 10 or 11, she disclosed that the defendant "came into her room one night and started touching her like girl parts down there." When asked about her emotional state at the time she made the disclosure, [Ky.B.] testified "she was like hysterically crying, like bawling her eyes out."

> The second witness to testify regarding [K.B.'s] disclosure was [D.H.]. She testified that she and [K.B.] attended a church event called Turning Point weekend in 2016. During the weekend, in the presence of eight or nine girls, [K.B.] shared that when she was ten years old, her former step father touch her. When describing her emotional state, [D.H.] testified "She was very weak in her like emotional state. She cried a little bit and she kind of hung her head, not because she was like—not because she was avoiding people but because it was hard for her to look up and talk

15

about it because she was kind of—it was an awkward topic." She also testified that she cried.

Ark. R. Evid. 803(2) states that "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" are excluded by the hearsay rule. The admissibility of an excited utterance is not to be measured by any precise number of minutes, hours, or days, but required that the declarant is still under the stress and excitement caused by the traumatic occurrence. *Pennington v. State*, 24 Ark. App. 70, 749 S.W.2d 680 (1988). It is clear by her emotional state at the times of her two disclosures, at age 10 and age 15, that [K.B.] was under the stress of excitement caused by the abuse at the hands of her step father. As such, those disclosures were exceptions to hearsay as an excited utterance under Ark. R. Evid. 803(2). Further, knowing that those statements were exceptions to the hearsay rule, Mr. Tyler made a strategic trial decision not to object so as not to draw attention to the statements and clue the jury that they were statements he felt were contrary to his case and the defendant's innocence.

We agree with the circuit court that appellant is not entitled to relief under this point. Even if we were to assume that the statements would not have been admissible under the excited-utterance exception, we are still left with Mr. Tyler's testimony at the Rule 37 hearing that he made strategic decisions throughout the trial to not object to some unfavorable testimony because he did not want to draw attention to it and alert the jury to statements that he felt were contrary to appellant's innocence. As we already mentioned, matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Williams*, 2017 Ark. 123, 517 S.W.3d 397; *Smith*, 2016 Ark. 417, 504 S.W.3d 595. Even if counsel's tactical choices had been different with the benefit of hindsight, the fact that the strategy was unsuccessful does not render counsel's assistance ineffective. *Williams*, *supra*. As such, appellant has failed to demonstrate that trial counsel's performance was deficient.

16

Moreover, even if we were to assume trial counsel's performance was deficient, based on the record before us, appellant has failed to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's alleged errors. We consider a claim of ineffective assistance of counsel through the perspective of the totality of the evidence put before the jury. *Burnside v. State*, 2017 Ark. App. 691, 537 S.W.3d 796. K.B. had testified in detail regarding the incidents she had told Ky.B. and D.H. about. Even Mr. Tyler commented at the Rule 37 hearing that K.B. came across as credible throughout her testimony. On the other hand, Mr. Tyler did not think appellant's behavior and demeanor on the stand helped his defense. He stated that appellant appeared very lethargic and seemed as though he was under the influence of drugs or alcohol. At one point, he thought appellant was going to fall asleep. In short, appellant has failed to show how keeping out K.B.'s statements to Ky.B. and D.H. that appellant had inappropriately touched her would have resulted in a different trial outcome. *See Burnside, supra.* As such, we cannot say that the circuit court was clearly erroneous in denying relief and affirm on this point.

VII. *Failure to Object to Improper Impeachment of a Defense Witness*

Next, appellant argues that he is entitled to relief because trial counsel was ineffective for failure to object to improper impeachment of a defense witness. Under this argument, appellant argues that Mr. Tyler should have objected when the State cross-examined Mr. Peek and questioned whether Mr. Peek knew that attorneys are mandated reporters. Mr. Peek responded that he was not aware of that statute and did not know that he was a mandated reporter. Appellant argues that because attorneys are not mandated reporters

17

under Arkansas Code Annotated section 12–18–402 (Supp. 2019), Mr. Tyler should have corrected the State's mischaracterization of Mr. Peek's lack of knowledge of the law.

At the Rule 37 hearing, Mr. Tyler testified that he thought he did object. However, after a review of the record, he acknowledged that he did not. That said, Mr. Tyler also stated in his affidavit attached to the State's response to appellant's postconviction motion that "Mr. Peek was being impeached long before the incorrect assertion that he was a mandated reporter of allegations of abuse." The circuit court agreed and stated in its order that "[i]t cannot be said that these three questions and three answers from a total of 13 pages of direct testimony and cross examination would have resulted in a different outcome had Mr. Tyler objected and the testimony stricken." Therefore, even if Mr. Tyler was deficient, appellant could not show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's error on such a relatively minor point. Because appellant cannot show prejudice from these alleged errors by trial counsel, we affirm on this point.

VIII. *Failure to Present Testimony Regarding Accuser's Source or Inspiration for Claiming Abuse*

Finally, appellant argues that he is entitled to relief because trial counsel was ineffective by his failure to present or seek to present testimony concerning the accuser's source or inspiration to make the original claim of abuse. He argues that Mr. Tyler failed to ask K.B. whether another minor child, K.H., who lived in the home, had given her the idea to falsely accuse appellant. Appellant further alleges that he was prejudiced by Mr. Tyler's failure to do so because he was "deprived of a plausible explanation about why the accusation against [him] was made." We disagree.

18

As part of appellant's defense at trial, Mr. Tyler attempted to introduce testimony regarding K.H., who had lived in the household with K.B. K.H. apparently had claimed that she had been abused by another man in Texas. The defense's theory was that K.H. gave K.B. the idea to falsely accuse appellant. However, the trial court refused to allow this testimony to be introduced through appellant's direct examination. When Mr. Tyler questioned appellant about K.H., the State objected and argued that Mr. Tyler needed to ask those questions of K.B. instead of appellant. Additionally, the State argued that it was irrelevant. The trial court sustained the objection and stated that it was irrelevant.

Mr. Tyler testified at the Rule 37 hearing that he had originally made the strategic decision to introduce this testimony through appellant's testimony rather than K.B.'s because he felt certain that K.B. would deny it and that the trial court would rule it inadmissible. He stated that even if the State objected, it would at least allow appellant to "try to ramble off something real quick to put a bug in the jury's ear." Moreover, he stated that even if the trial court had allowed him to ask K.B. those questions if he recalled K.B., he did not want to do so because K.B. came across as credible throughout her testimony.

Like the circuit court, we cannot say that Mr. Tyler's performance was deficient. As already mentioned above, matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Williams*, *supra*. Moreover, regardless of whether Mr. Tyler desired to recall K.B. to ask her about K.H., the trial court already ruled that the testimony was inadmissible as irrelevant. As such, we cannot say that the circuit court's denial of relief on this point is clearly erroneous, and we affirm.

## IX. *Conclusion*

We find no clear error in the circuit court's denying appellant Rule 37 relief, and we affirm.

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.