Johnny Ray MASSEY, Fay MASSEY, and
Johnnie MASSEY *v* Mary C. MASSEY

80-39                                    596 S.W. 2d 701
Supreme Court of Arkansas
Opinion delivered April 14, 1980

*Blair Arnold and John Norman Harkey,* by: *John Norman Harkey,* for appellants.

*Highsmith, Gregg, Hart & Farris;* by: *Josephine L. Hart,* for appellee.

GEORGE ROSE SMITH, Justice. The only disputed issue remaining in this divorce case is the custody of the couple's two infant children. The chancellor awarded custody to the mother, Mary C. Massey, the appellee. The main argument for reversal is that the chancellor should have sustained a motion to strike the testimony of a social worker, Eleanor Mille, and that without Mrs. Mille's testimony the award of custody to the mother is against the preponderance of the evidence. We hold that the chancellor did not abuse his discretion in ruling that the motion to strike, made after the close of Mrs. Mille's direct examination, came too late.

Johnny and Mary Massey were married in 1973, but were separated at times before Johnny brought this suit for

divorce and child custody in 1978. Johnny's parents, the other appellants, filed an intervention seeking custody of the two children and visitation privileges. It may fairly be inferred from the record that the real antagonists in this custody dispute are the children's mother on the one side and their paternal grandmother on the other.

The appellee called the social worker, Mrs. Mille, as a defense witness. Mrs. Mille was the Pulaski County Director for SCAN (Suspected Child Abuse and Neglect). She had a staff of about 17 persons. SCAN had extensively investigated the home of Mary Massey in early 1975, when Mary was living in Pulaski County and her husband was temporarily living with his parents in Stone County. Mrs. Mille testified almost at the outset that she had very little personal knowledge about the case. "Everything that I have is from records or from interviewing the interviewer who was working in the home with Mrs. [Mary] Massey."

Even though Mrs. Mille's testimony was obviously hearsay almost in its entirety, no objection was made during her extensive direct examination. At first Mrs. Mille's testimony seemed to be unfavorable to the children's mother. The witness detailed the complaints made to SCAN within a period of a few weeks by Mrs. Massey, Sr., by an anonymous caller, by the wife of Mary Massey's first husband, and by a former baby-sitter who was living in Wyoming. It may be inferred that all these nearly contemporaneous complaints, largely directed to Mary Massey's treatment of her two children by her first husband, were lodged at the instance of the appellants. The complaints charged that Mary Massey was an alcoholic and a habitual liar and that she abused her children by hitting, pinching, and kicking them, by pulling their hair, and by subjecting them to mental and verbal abuse. Mrs. Mille, after stating the complaints, proved to be a disinterested witness, but one strongly favorable to Mary Massey. She testified in substance that the complaints were exaggerated and that the extensive SCAN investigations disclosed nothing to lead Mrs. Mille to believe that Mary Massey was not a good mother or not capable of taking care of her children.

Mrs. Mille's direct examination was completed at about the end of the second day of trial. The attorneys had agreed that the trial would be continued to another time. Counsel for the grandparents stated that his cross-examination of Mrs. Mille would take at least an hour or more. He also wanted to study the SCAN records, to which Mrs. Mille had referred during her testimony. Mrs. Mille had spent two days attending the trial in Stone County and indicated that it would be a hardship for her to come back again, but she agreed to do so.

When the trial was resumed several weeks later, counsel for the appellants asked Mrs. Mille only three perfunctory questions, to confirm her earlier statement that her testimony was not based on personal knowledge (except for one interview with the grandparents). The court denied the ensuing motion to strike, as being too late. Mrs. Mille was then excused without any further cross-examination whatever.

An objection to inadmissible testimony should be made promptly. We have said that inexcusable delay in making a motion to strike may be a ground for denial of the motion, adding that the trial judge is in a much better position than this court to judge whether such a motion is timely and that he should be held only to the exercise of a sound discretion. *Ark. State Highway Commn.* v. *Stallings,* 248 Ark. 1207, 455 S.W. 2d 874 (1970).

Here we find no abuse of discretion. It was apparent almost from the very beginning of Mrs. Mille's testimony that it was not based on personal knowledge, but no objection was made as she testified in great detail about investigations and reports made by her staff. Counsel for the appellants may very well have had some knowledge of the investigations, as their clients had initiated the complaints and as counsel expected the cross-examination to take more than an hour. Mrs. Mille was compelled by the delay to make a second useless trip to Stone County. The persons mentioned in the reports had been subpoenaed, but could not be found. Even in this court counsel do not offer any explanation or defense of their delay in objecting to the testimony. We cannot say that the trial judge's ruling was an abuse of discretion.

It is also argued that the SCAN written reports were not admissible as business records. The point is not really important, because the principal contents of the reports had already been set forth in Mrs. Mille's testimony, as the appellants concede. Finally, we need not discuss the merits in detail, it being sufficient to say that if Mrs. Mille's testimony is considered the chancellor's award of custody to the mother is not clearly against the weight of the evidence.

Affirmed.