Rick LOGAN v. STATE of Arkansas

CR 87-45 773 S.W.2d 413

Supreme Court of Arkansas
Opinion delivered June 26, 1989
[Supplemental Opinion on Denial of Rehearing,
September 11, 1989.]

268

*Gunn & Borgognoni*, by: *Leslie Borgognoni*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant, who worked at a school for developmentally handicapped children, was convicted on seven counts of rape by deviate sexual activity. He committed the crimes against seven boys who attended the school. He was sentenced to forty years in prison on each count with the sentences to run consecutively. We affirm six of the judgments of conviction, but reduce one to carnal abuse in the third degree.

Appellant's primary point of appeal concerns the prosecutor's veiled reference to the appellant's refusal to testify. The material part of the argument, the objection, and the ruling are as follows:

> [PROSECUTOR]: . . . You know the defense pointed out to you in voir dire that they don't have to do anything, *they don't have to prove anything, and a little bit to my surprise they didn't. Early Friday or Thursday —*

> [DEFENSE ATTORNEY]: Your Honor, object to any comments he may make in reference to us making or

putting on a defense or not putting on a defense. I hate to interrupt.

[PROSECUTOR]: If it please the Court, that was brought up during the voir dire by the defense, Your Honor, several times. They also had people sworn in front of the Jury and made that decision.

[THE COURT]: The *objection will be overruled.*

[DEFENSE ATTORNEY]: Thank you, Your Honor.

[PROSECUTOR]: *Everyone said you wouldn't hold it against them and I know you won't, although I will say I, a little bit about that and almost to the point of saying it caught me with my pants down, I was expecting something. Even though the only evidence you have before you is the evidence we presented,* as viciously cross-examined, attacked by the defense attorneys, and that's their job, even though it's our evidence, I still feel compelled for two reasons to review it somewhat with you.

■ We have long held that it is improper for the prosecutor to call the attention of the jury to the failure of the accused to testify. *Lee v. State*, 73 Ark. 148, 83 S.W. 916 (1904). The United States Supreme Court has reached the same result on the basis of the Fifth Amendment. *Chapman v. California*, 386 U.S. 18 (1967).

■ In *Bailey v. State*, 287 Ark. 183, 697 S.W.2d 110 (1985), we reversed a case in which the prosecutor had commented, "The only thing that we've heard here today about which occurred in that room is from Doris Watson. She's the only person. These two ladies that were called, they weren't in that room." Citing *Adams v. State*, 263 Ark. 536, 566 S.W.2d 387 (1978), we explained that the comment fell into the category of a veiled reference to the accused's failure to testify. In *Adams v. State, supra,* the following comment caused the case to be reversed, "because what did the defense, how many witnesses did the defense put on for your consideration." In both cases the comments implied that the accused personally failed to dispute the State's case. The case at bar is the same. Each of the boys testified that they were either alone or with another of the victims when the appellant committed the rape. Therefore, the appellant

personally is the only one who could dispute the testimony. The clear inference is that the prosecutor was commenting upon the appellant's failure to dispute the boys' testimony. The comment was impermissible, and the court's overruling of the objection was in error.

The State counters by arguing that the remedy was waived since the appellant did not move for a mistrial, the proper remedy for a comment on an accused's failure to testify. *See Floyd* v. *State,* 278 Ark. 86, 643 S.W.2d 555 (1982). The argument would have merit if the trial judge had sustained the objection, meaning that he recognized the statement was a reference to the accused's failure to testify. However, he over-ruled the objection which meant he ruled that it was not an impermissible comment. To require the appellant to move for a mistrial after the court had already overruled the objection would be to require a vain and useless act, and the law does not require vain and useless acts. *Pender* v. *McKee,* 266 Ark. 18, 37, 582 S.W.2d 929 (1979); *Tri-State Ins. Co.* v. *Smith,* 248 Ark. 71, 74, 449 S.W.2d 698 (1970). Thus, we address the error.

In *Chapman* v. *California,* 386 U.S. 18 (1967), the Supreme Court concluded that some constitutional errors can be found harmless and thus not require automatic reversal. The Court stated that before constitutional error may be held to be harmless, the reviewing court must be able to declare its belief that the error was harmless beyond a reasonable doubt. We have interpreted this to mean, "that there is not a reasonable possibil-ity that the remarks complained of on the part of the prosecuting attorney might have contributed to appellant's conviction. . . ." *Adams* v. *State,* 263 Ark. 536, 566 S.W.2d 387 (1978). Accord-ingly, we must examine the record in this case.

First, it is significant that the remarks were only a veiled reference, and not a clear and blatant statement about the failure to testify. Second, the appellant put on no evidence, and cross-examination does not appear to have damaged the State's case. Third, the State's case was strong. The victims graphically testified about the crimes committed upon them, and in some instances their testimony was corroborated by other victims. Parents and school personnel corroborated the testimony by describing concurrent changes in behavior of the boys, and in

some instances, physical signs of abuse. Finally, a psychologist testified without objection that in his opinion these mentally defective children could not get together and scheme to convict the appellant nor could anyone program them to act out the emotional despair or consistently describe the acts as they did. He testified that the victims' fears and distress were real, and their emotions were real. He pointed out that they were not subjected to suggestion as each described the crime in his own way. For example, one boy referred to appellant's penis, while another referred to his peepee, and another referred to his lilly. On the whole record, we are satisfied that the error was harmless beyond a reasonable doubt.

The appellant challenged the competency of the victims to testify. The trial court ruled that six of the seven victims were competent to testify. The appellant assigns that ruling as a point of appeal.

A trial court must begin with the presumption that every person is competent to be a witness. A.R.E. Rule 601. The burden of persuasion is upon the party alleging that the potential witness is incompetent. To meet that burden the challenging party must establish the lack of at least one of the following: (1) the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; or (2) an understanding of the consequences of false swearing; or (3) the ability to receive accurate impressions and to retain them, to the extent that the capacity exists to transmit to the factfinder a reasonable statement of what was seen, felt or heard. *Jackson v. State*, 290 Ark. 375, 720 S.W.2d 282 (1986). The competency of a witness is a matter lying within the sound discretion of the trial court and, in the absence of clear abuse, we will not reverse on appeal. *Hoggard v. State*, 277 Ark. 117, 640 S.W.2d 102 (1982).

Here, the evidence easily established that the boys understood (1) and (2) above, the obligation of the oath and the consequences of false swearing. It is only number (3) above, the capacity to observe, remember and narrate, which requires any discussion. Each of the boys testified in graphic language to the event or events he observed and recalled. Their testimony was responsive and consistent about the acts committed by appellant. We cannot say the trial judge abused his great discretion in

admitting the testimony.

█ The appellant argues that in the convictions for the rape of two of the boys, Jeff New and Justin Crouse, there was no substantial evidence of forcible compulsion. The argument has no merit in the case of Jeff New. He testified that he tried to get away from appellant many times, but that appellant would grab him and keep him in the bathroom, and that on one occasion the appellant hit him on the head. Appellant was an adult teacher's aid at the school where New was a student. Considering the age and authority relationship, the violence used was sufficient to meet the definition of forcible compulsion.

█ The argument does have merit with regard to Justin Crouse, because, in his case, there was no substantial evidence of forcible compulsion. There was testimony by the psychiatrist that Justin suffered some injury, but these injuries apparently came from the deviate sexual activities themselves, and not from force used to compel Justin to submit to the act. The evidence is not sufficient to sustain the conviction for the rape of Justin Crouse. However, when an accused is convicted of rape by deviate sexual activity and, on appeal, we find there was substantial evidence of deviate sexual activity, but no substantial evidence of forcible compulsion, we can reduce the conviction to carnal abuse in the third degree and sentence the appellant accordingly. *Mills* v. *State*, 270 Ark. 141, 603 S.W.2d 416 (1980). Accordingly, we reduce the conviction of rape of Justin Crouse to carnal abuse in the third degree, Ark. Code Ann. § 5-14-106 (1987), and reduce the sentence for this conviction to one year imprisonment to run consecutively to the other sentences.

█ The appellant next argues that it was error to allow a witness, Dorothy Jackson, to testify because, he argues, the prosecutor did not provide the witness's name prior to trial. *See* A.R.Cr.P. Rule 17.1(a)(i). The argument is without merit for two reasons. First, the objection was not timely. Her testimony was almost completed before the appellant objected. An objection to inadmissible testimony should be made promptly. *Massey* v. *Massey*, 268 Ark. 351, 596 S.W.2d 701 (1980). Even after the untimely objection the appellant did not move to strike the testimony already heard. Second, there was evidence from which the trial court could have concluded that the witness's name had

been supplied. The witness had already testified at a pre-trial hearing which constituted some notice that she would be called; therefore, the testimony should not have come as a surprise. Further, the deputy prosecutor stated to the court that the name of the witness had been orally provided. The point of appeal does not demonstrate reversible error.

 The information charged the appellant with counts of rape by deviate sexual activity by either forcible compulsion or upon one who is incapable of consent because he is physically helpless. *See* Ark. Code Ann. § 5-14-103 (1987). The appellant contends these are crimes of different natures and cannot validly be charged together. If they were different crimes they could not be charged together, Ark. Code Ann. § 16-85-404 (1987), but they are not crimes of different natures. They are different counts of one offense which was committed by either of alternative means. Such an alternative charge is authorized by statute. Ark. Code Ann. § 16-85-414(a) (1987). The trial court's ruling was correct.

The appellant filed a motion requesting that a special prosecutor be appointed because the Prosecuting Attorney had allegedly hired two law clerks who worked in the defense attorney's office. The trial court denied the motion, and appellant assigns the ruling as error.

At the scheduled hearing on the motion Melvin Jackson, one of the clerks, was called to the stand. He testified that he had not worked for either of the defense attorneys, but instead worked for another lawyer who officed with them. The lawyer's office-sharing arrangement was not explained. He testified that he had never seen the appellant, had not done any research or worked on his cases in any manner. He testified that the extent of his involvement was to make a remark about competency. He then went to work for the prosecutor's office, but the prosecutor requested he not work on these cases, and he had not done so. A secretary testified that she thought he had heard a confidential office discussion. At a later hearing appellant testified that he had discussed the separate case with the other clerk, Carl LeMar. However, the prosecutor countered that he had offered LeMar a job, but that he would not begin work until the cases were over. The trial court denied the motion.

■ The trial court did not abuse its discretion in refusing to appoint a special prosecutor. Melvin Jackson did not receive any confidential information, and did not work on this case in any manner. More importantly, he did not assist the prosecutor in any capacity. Carl LeMar had not yet gone to work for the prosecutor. There simply was no violation of a confidential relationship. The law does not require that a trial court must disqualify a duly elected prosecutor unless there is some evidence of specific misconduct. *Upton* v. *State*, 257 Ark. 424, 516 S.W.2d 904 (1974); *cf. Todd* v. *State*, 253 Ark. 283, 485 S.W.2d 533 (1972).

The appellant next argues that the trial court erred in refusing to grant a change of venue. He submitted eleven (11) affidavits supporting his motion for a change of venue, and the State responded with 141 affidavits of the opposite view. The trial court held that the appellant had failed to show that he could not get a fair trial in Benton County.

■ The burden of proof is upon the one moving for a change of venue. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). The trial court had sound discretion in deciding such a motion. *Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986). Here, the State's affidavits were from virtually every town in the county, and we cannot say the trial judge abused his discretion. What a criminal defendant is entitled to, and what the appellant got, was a jury composed of persons who could and did decide the case on the testimony presented in court and not on the basis of the news media coverage of the matter. *Swindler* v. *State*, 267 Ark. 418, 592 S.W.2d 91 (1979), *cert. denied*, 449 U.S. 1057 (1980).

Finally, the appellant argues that the trial court erred in refusing to grant individual voir dire. However, appellant expressly waived the issue in the trial court. Accordingly, we do not consider the argument.

Affirmed in part and modified in part.

HICKMAN, HAYS, and GLAZE, JJ., concur.

STEELE HAYS, Justice, concurring. While I concur in the result, I respectfully disagree that it was error for the court not to order a mistrial on its own motion because of a "veiled reference" by the prosecutor during closing argument to the defendant not testifying in his own behalf. It is quite apparent that the

prosecuting attorney was not referring to the defendant not having testified, but to the fact the defense had produced several potential witnesses to be sworn at the beginning of the trial, and then rested without calling a witness.

Two of the cases cited by the majority provide a common basis for analysis. In neither case were the remarks of counsel "veiled" or ambiguous, but were direct and deliberate references to the defendant's failure to testify. In *Lee* v. *State*, 73 Ark. 148, 83 S.W. 916 (1904), the deputy prosecutor told the jury "If the defendant is not guilty, no one knows it better than he does. Why did he not take the stand and tell you that he did not steal those cattle? He sits there silent as the grave, and asks you to turn him loose, without opening his mouth as a witness."

Similarly, in *Chapman* v. *California,* 386 U.S. 18 (1966), the state's attorney took full advantage to comment upon the defendant's silence. The *Chapman* court described the prosecutor's argument to the jury, as "filled from beginning to end with numerous references to their silence and inferences of their guilt resulting therefrom." In contrast to *Lee* and *Chapman,* the remarks of counsel in this case ("they don't have to prove anything, and a little bit to my surprise they didn't") pale in comparison, as the majority opinion tacitly concedes.

I agree entirely with the *Lee* and *Chapman* cases, but the majority would apply the rule, as it did in *Bailey v. State,* 287 Ark. 183, 697 S.W.2d 110 (1985), whenever the attorney for the state makes even the faintest allusion to the lack of proof from the defense. That was, I believe, never the intent of the *Lee* and *Chapman* courts. I expressed my views at some length in my dissent in *Bailey* v. *State, supra,* and will not repeat those comments here. Suffice is to say the improvidence of extending the rule beyond its intended boundaries is thoughtfully stated by Justice Fogleman in his dissenting opinion in *Adams* v. *State,* 263 Ark. 536, 566 S.W.2d 387 (1978):

> Of course, a prosecuting attorney should not comment on a defendant's failure to testify. But for an advocate to be prohibited from pointing out that no witness testified except those presented by the state, as a basis for eliminating reasonable doubt and as a factor in determining the weight to be given that evidence, is extreme and unneces-

sary. See 14 ALR 3d 723, 729, § 3, Practice Pointers. It reads something into the Fourteenth Amendment that isn't there. I fear that it means that a prosecuting attorney cannot ask a jury to accept even an isolated statement by one witness because no one denies it, when dozens of people could if it were untrue.

It is all very well to relegate the prosecuting attorney into the role of a minister of justice in some stages of the prosecutorial process, for he must act in a quasi-judicial capacity. But in closing argument to a jury, his role as an advocate completely overshadows any other role. Then he is society's — the people's — only advocate. Sending him into the arena shackled, hamstrung and gagged destroys his ability to act as such, at a time when society's need for strong advocacy was never greater.

Nor can I agree that when an objection is overruled, it is tantamount to a motion for mistrial because the motion itself would be a "vain and useless act." The appellant makes no such argument. The implicit holding of the majority produces a curious and troubling precedent — whenever there is an objection during trial proceedings, unless the objection is sustained, there is a built-in motion for mistrial in the record, albeit none was requested, presenting the appellate court with the burden of deciding whether the trial court abused its discretion by not granting a mistrial on its own initiative as a result of a ruling which is only later held to be erroneous.

HICKMAN, J., and GLAZE, J., join.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## SEPTEMBER 11, 1989

ROBERT H. DUDLEY, Justice. In his petition for rehearing the appellant contends that the opinion in this case erroneously refers to 141 affidavits opposing a change of venue. Appellant states that the 141 affidavits are not part of the record in this case, Supreme Court Case No. CR 87-45, but, instead, are a part of the record in another of his appeals, *Logan* v. *State*, 299 Ark. 255, 773 S.W.2d 419 (1989). The appellant is mistaken. The 141 affidavits are reflected at pages 123 through 263 of the transcript,

submitted by appellant in this case, No. CR 87-45.

Appellant makes other arguments for rehearing, and we find no merit in them. The petition for rehearing is denied.